UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EVERGREEN ASSOCIATES, INC. EVERGREEN LIONS CLUB,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1689** |
| **INDEPENDENT SPECIALTY INSURANCE COMPANY AND CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO BINDING AUTHORITY UMR B604510568622021,** **Defendants** | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a motion to compel arbitration filed by Defendants Independent Specialty Insurance Company and Certain Underwriters at Lloyd's London Subscribing to Binding Authority UMR B604510586220215 (collectively "Defendants").[1] Plaintiff Evergreen Associates Inc., Evergreen Lions Club filed an opposition to Defendants' motion to compel arbitration and stay litigation pending arbitration.[2] Defendants replied.[3] For the following reasons, Defendants' motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arose out of an insurance coverage dispute between the Plaintiff and Defendants following Hurricane Ida on August 29, 2021.[4] On May 18, 2023, Plaintiff filed suit in this Court.[5] Plaintiff alleges the property sustained damage during Hurricane Ida and that it filed a claim for the losses with Defendants.[6] At all times relevant to this

---

[1] R. Doc. 10.
[2] R. Doc. 14.
[3] R. Doc. 24.
[4] R. Doc. 10.
[5] R. Doc. 10 at p. 1.
[6] *Id.*

1

litigation, Defendants provided Plaintiffs policies of insurance ("the Policies"), which covered the Insured Property in Louisiana against loss and damage caused by the elements.[7] The Policies were in full force and effect at the time of the covered loss events that are the subject of the instant lawsuit.[8]

In compliance with the Policies, Plaintiff provided notice of the loss events to Defendants.[9] Plaintiff also made the premises available for inspection and cooperated with Defendants throughout the claims process.[10] Plaintiff alleges it engaged "independent professionals to determine the scope and cost of damages caused by Hurricane Ida, submitting proofs of loss totaling $1,299,014.75.[11] Plaintiff alleges Defendants "arbitrarily and capriciously denied and/or underpaid" Plaintiff's claim.[12] Plaintiff alleges breach of contract and bad faith pursuant to La. R.S. 22:1892 and 22:1973.[13]

On June 8, 2023, Defendants filed a motion to opt out of this Court's Streamlined Settlement Program ("SSP").[14] On the same day, Defendants filed the instant motion to compel arbitration and stay the proceedings.[15] On July 14, 2023, the Magistrate Judge granted Defendants' motion to opt out of the SSP for the sole purpose of resolving the motion to compel arbitration.[16] The Magistrate Judge directed that, if the motion is

---

[7] R. Doc. 14 at p. 2.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] R. Doc. 10 at p. 2.
[12] *Id.*
[13] *Id.*
[14] R. Doc. 9.
[15] R. Doc. 10.
[16] R. Doc. 19.

2

denied, the district court retains the discretion to reconsider the issue of whether this case should proceed under the SSP.[17]

## LEGAL STANDARD

"Arbitration is a substitute for litigation whose purpose is to settle the parties' differences in a fast, inexpensive manner and in a tribunal chosen by them."[18] "When a party to a lawsuit claims that the matter is subject to arbitration, it must be determined whether there is a valid agreement to arbitrate between the parties and whether the dispute falls within the scope of the arbitration agreement."[19]

"Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts."[20] The Louisiana Binding Arbitration Law provides:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[21]

Ordinary state-law principles governing the formation of contracts are applied when deciding whether the parties agreed to arbitration.[22] "Louisiana law does not require that [a] written arbitration agreement be signed by the parties."[23] "Any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration."[24]

---

[17] *Id.* at p. 2.
[18] *Hanlon v. Monsanto Ag Prod., LLC*, 124 So. 3d 535, 539 (citing *Tubbs Rice Dryers, Inc. v. Martin*, 33 So. 3d 926 (La. Ct. App. 2 Cir. 2010)).
[19] *Id.*
[20] *Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16).
[21] La. R.S. 9:4201.
[22] *Duhon*, 2016-0818 (La. 10/19/16).
[23] *Id.* (citing *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532 (5th Cir. 2005)).
[24] *Woodson Const. Co. v. R.L. Abshire Const. Co.*, 459 So. 2d 566, 569 (La. Ct. App. 1984) (citing *United Steelwks. of Am. v. Warrior and Gulf N. Co.*, 363 U.S. 574 (1960); *American Dairy Queen Corp. v. Tantillo*, 536 F. Supp. 718 (M.D. La. 1982)).

## **LAW AND ANALYSIS**

Defendants seek to compel arbitration and stay the proceedings under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") and the Federal Arbitration Act ("the FAA"), which they argue govern this dispute.[25] Plaintiff acknowledges the existence of an arbitration provision but argues the arbitration agreement is invalid because (1) a service of suit endorsement provision in the Policies mandates that the dispute remains in this Court; and (2) Plaintiff entered into the arbitration agreement by mistake.[26]

In general, arbitration clauses in insurance contracts are not permitted under Louisiana law.[27] However, state law is preempted and superseded by the Convention,[28] which was implemented by Congress.[29]

"'The Supreme Court has recognized generally 'the strong federal policy in favor of enforcing arbitration agreements,' and that this federal policy favoring arbitration 'applies with special force in the field of international commerce.'"[30] Specifically, "the Supreme Court has recognized that:

> the goal of the Convention, and the principal purpose underlying American adopting and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international

---

[25] R. Doc. 10.
[26] R. Doc. 14.
[27] *See* LA. REV. STAT. 22:868 ("No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state . . . shall contain any condition, stipulation, or agreement . . . [d]epriving the courts of this state of the jurisdiction or venue of action against the insurer").
[28] *McDonnell Grp., L.L.C. v. Great Lakes Ins. SE, UK Branch* 923 F.3d 427, 432 (5th Cir. 2019), as revised (June 6, 2019); *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 725 (5th Cir. 2009).
[29] 9 U.S.C. § 201 et seq. (2018).
[30] *Simon v. Princess Cruise Lines, Ltd.*, NO. G-13-0444, 2014 WL 12617820, at *2 (S.D. Tex. May 19, 2014) (first quoting *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002)), then quoting *Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1986)).

4

contracts and to unify the standards by which agreements to arbitration are observed and arbitral awards are enforced in the signatory countries."[31]

The FAA "provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the Convention."[32]: First, the FAA provides "an action to compel arbitration in accord with the terms of the agreement, 9 U.S.C. § 206."[33] Second, after arbitration has concluded, the FAA provides "an action to confirm an arbitral award made pursuant to an arbitration agreement, 9 U.S.C. § 207."[34] "The Convention contains separate defenses that correspond to each of these two stages of enforcement."[35] The current stage of this litigation is the first stage—an action to compel arbitration.

With respect to the first cause of action, the Court must consider: (1) whether the Convention requires the Court to enforce the arbitration clause; and (2) whether there is an applicable defense to the enforcement of the arbitration clause. The Court will address each in turn.

## I. Whether the Convention Requires the Court to Enforce the Arbitration Clause

"The Convention requires a district court to order arbitration if an international arbitration clause falls within the Convention's coverage."[36] "Indeed, the Convention 'contemplates a very limited inquiry by courts when considering a motion to compel arbitration.'"[37] The Convention requires American courts to enforce arbitration clauses if:

---

[31] *Id.* (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 517 n.10 (1974)).
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983).
[36] *Simon*, No. G-13-0444, 2014 WL 12617820, at *2 (S.D. Tex. May 19, 2014) (collecting cases).
[37] *Id.* (quoting *Francisco*, 293 F.3d at 273).

5

"(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen."[38]

In this case, all four requirements are satisfied. The first prong is satisfied, because there is a written agreement to arbitrate in this matter.[39] Second, the agreement provides for arbitration in a Convention signatory nation. In this case, the Convention provides for arbitration in Tennessee.[40] Thus, the second criterion is fulfilled, as Tennessee is located in the United States, a signatory nation to the Convention. The agreement also satisfies the third prong, as it "arises out of a commercial legal relationship"—a contract for insurance coverage.[41] Likewise, the agreement fulfills the last prong of the test, as one insurer, RenaissanceRe Corporate Capital (UK) Limited, subscribing to the risk through the Lloyd's of London insurance market in London, England,[42] is "not [an] American citizen."[43] Accordingly, because at least one defendant is a foreign citizen, the fourth prong is satisfied.[44]

If these four criteria are satisfied, "[c]ourts are required to 'rigorously enforce arbitration agreements according to their terms,'" and "individuals seeking to avoid the

---

[38] *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d. 327, 339 (5th Cir. 2004).
[39] *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*, 923 F.3d 427, 432 n.8 (5th Cir. 2019); *Sphere Drake Ins. PLC v. Marine Towing*, 16 F.3d 666, 670 (5th Cir. 1994).
[40] R. Doc. 10-1 at p. 8.
[41] *See generally id.*
[42] *Id.*
[43] *Freudensprung*, 379 F.3d at 327; *see also* R. Doc. 10-1 at pp. 2-3.
[44] Although Plaintiff argues the Court should not compel arbitration of Defendant ISIC because it is not a foreign insurer, the Court is persuaded by the ever-growing body of jurisprudence that Plaintiff's position is incorrect. Compelled arbitration is appropriate for both the non-American and American Defendants, because their conduct is "intertwined, indeed identical." *Holts v. TNT Cable Contractors, Inc.,* No. 19-13546, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020); *see also Bopp v. Independent Specialty Ins. Co.*, 2023 WL 2185412, at *3 (E.D. La. Feb. 23, 2023) (collecting cases). Here, each Defendant subscribed to the same insurance policy for the same property. R. Doc. 10-1 at p. 3.

enforcement of an arbitration agreement face a high bar."[45] When the four factors required for the Convention are satisfied, "the Court is required to compel arbitration unless the Arbitration Agreement is 'null and void, inoperative or incapable of being performed'"—referred to as the "null and void" clause[46] Because all four requirements are met, the Court must enforce the arbitration clause and compel arbitration, unless the "null and void" clause provides a valid defense.

## II. Whether There is an Applicable Defense under the Convention

Plaintiff argues the arbitration agreement is invalid because (1) a service of suit endorsement provision in the Policies mandates that the dispute remains in this Court; and (2) Plaintiff entered into the arbitration agreement by mistake.[47] However, pursuant to the Convention, Plaintiff's defenses are not properly before the Court at this time.

As discussed above, the FAA provides two causes of action for a party seeking to enforce arbitration agreements covered by the Convention: first, an action to compel arbitration, and second, an action to enforce the arbitration award.[48] At this first stage of litigation—the action to compel arbitration—Article II of the Convention provides the "null and void" clause as the only defense to arbitration.[49] "The Convention's 'null and void' clause limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses."[50] "The 'null and void' language must be read narrowly, for the signatory nations have jointly declared a general policy of

---

[45] *Freudensprung*, 379 F.3d at 327 (first quoting *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013), and then quoting *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 907 (5th Cir. 2005)).
[46] *Simon*, No. G-13-0444, 2014 WL 12617820, at *3.
[47] R. Doc. 14.
[48] *Simon*, No. G-13-0444, 2014 WL 12617820, at *3.
[49] *Id.*
[50] *Id.* (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005)).

7

enforceability of agreements to arbitrate."[51] "In other words, signatory nations have effectively declared a joint policy that presumes the enforceability of agreements to arbitrate."[52] Accordingly, "[t]he limited scope of the Convention's null and void clause 'must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale.'"[53]

We are in the first stage of litigation—the action to compel arbitration—and thus, the null and void clause of the Convention is the only defense available to Plaintiff. Plaintiff raises two defenses to the enforcement of the arbitration provision. First, Plaintiff argues a service of suit endorsement provision in the Policies mandates that the dispute remains in this Court.[54] Second, Plaintiff argues the arbitration clause is null and void because the "board member who managed the insurance contracts for Plaintiff was unaware that there was an arbitration provision in the Policies," and therefore, Plaintiff entered into the agreement by mistake.[55] However, Plaintiff's defenses do not fall within the limited scope of the Convention's "null and void" clause and as a result cannot be raised this stage of litigation.

Plaintiff's first defense—that a service of suit endorsement provision overrides the arbitration clause—does not fall within the limited scope of the Convention's "null and void" clause, which allows for defenses only on the basis of defenses such as fraud, mistake, duress, and waiver.[56] Instead, the defense of validity on the basis of the service

---

[51] *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983).
[52] *Id.* at 54.
[53] *Simon*, No. G-13-0444, 2014 WL 12617820, at *3 (quoting *Bautista v*, 396 F.3d at 1302).
[54] R. Doc. 14 at pp. 2-4.
[55] *Id.* at p. 4.
[56] To the extent Plaintiff argues the service of suit clause acts as a waiver of Defendants' right to compel arbitration, the Court finds this argument unpersuasive. The Fifth Circuit has recognized that defendants may contractually waive their right to remove to arbitration under the Convention. *McDermott Int'l v.*

8

of suit endorsement provision is one properly considered under Article V, rather than Article II, of the Convention—at the award-enforcement stage.[57] Even if it were properly considered at this stage, the Court is not persuaded by the merits of Plaintiff's argument. The Fifth Circuit and the district courts within the Fifth Circuit have consistently rejected arguments identical to Plaintiff's, and the Court is not persuaded the outcome should be different in this case.[58]

Plaintiff's second defense—that Plaintiff entered into the arbitration agreement by mistake because Plaintiff did not know there was an arbitration agreement in the Policy—fares no better. Courts within the Fifth Circuit have determined that arguments on the basis of ineffective notice of the existence of an arbitration clause are not defenses the Court may consider at this stage.[59] Instead, when conducting the limited inquiry before

---

*Lloyds Underwriters of London*, 944 F.2d 1199, 1209 (5th Cir. 1991). However, such waivers must be explicit. *Id.*

[57] *See OJSC Ukrnafta v. Carpastsky Petroleum Corp.*, 957 F.3d 487, 497 (5th Cir. 2020) (holding Article V "allows a court to deny recognition when the parties to the arbitration agreement were, 'under the law applicable to them, under some incapacity, or the said agreement is not valid") ("Article V(1)(a) extends broadly to all issues concerning the validity of [the agreement] . . . including issues of capacity, existence, and validity").

[58] *McDermott*, 944 F.2d at 1205 (finding a service of suit clause and an arbitration clause were "co-equal forum selection clause[s]," rather than in contradiction to one another); *Olsen Sec. Corp. v. Certain Underwriters at Lloyd's* London, No. 22-3120, 2023 WL 405437, at *6 (E.D. La. Jan. 25, 2023) (Brown, J.) (applying *McDermott* and holding the service of suit caluses did not supersede the language of the arbitration clause nor create ambiguity that necessitates denial of the motion to compel arbitration); *Academy of Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London*, No. 22-4401, 2023 WL 246832, at *2-3 (E.D. La. Jan. 18, 2023) (Africk, J.) (holding the service of suit provision did not negate the arbitration clause but rather "complement[ed] the arbitration clause by providing a judicial forum for compelling or enforcing arbitration"); *Tra-Dor Inc. v. Underwriters at Lloyd's London*, No. 21-02997, 2022 WL 3148980, at *4 (W.D. La. July 25, 2022) (finding no conflict between a service of suit clause and an arbitration clause); *Woodward Design+Build, LLC v. Certain Underwriters at Lloyd's London*, No. 19-14017, 2020 WL 5793715, at *3 (E.D. La. Sept. 29, 2020) (finding the defendants did not waive their right to arbitration by issuing endorsement containing service of suit provisions); *Sw. LTC-Mgmt. Servs. LLC v. Lexington Ins. Co.*, No. 18-491, 2019 WL 1715832, at *6 (E.D. Tx. Mar. 29, 2019) (concluding the service-of-suit provision complimented the arbitration clause by providing a judicial forum for compelling or enforcing arbitration); *Gemini Ins. Co. v. Certain Underwriters at Lloyd's London*, No. H-17-1044, 2017 WL 1354149, at *6 (S.D. Tx. Apr. 17, 2017) (applying *McDermott* and concluding the service of suit endorsement was a complement to the arbitration clause).

[59] *Calicdan v. MD Nigeria LLC*, No. 6:21-CV-03283, 2022 WL 2165638, at *9 (W.D. La. May 17, 2022) (adopting the reasoning employed by the United States Court of Appeals for the Eleventh Circuit in *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005)) (holding a plaintiff's lack of knowledge of an arbitration

9

the Court today, "it is especially appropriate to abide by the general principle that 'one who has executed a written contract and is ignorant of its contents cannot set up that ignorance to avoid the obligation absent fraud and misrepresentation,'" neither of which exist in this case.[60]

Likewise, even if Plaintiff's ineffective notice defense were properly before the Court, Plaintiff's argument would fail. "Ignorance by one party of the terms of an agreement may form a basis for nullity if it was induced by the other party."[61] "Inducement may be found if the party misrepresented facts, acted in less than good faith, or had notice of the other party's ignorance."[62] Plaintiff has made no allegations that Defendants misrepresented facts, acted in less than good faith, or had any knowledge that Plaintiff was not aware of the arbitration provisions contained in the Policies.[63] Instead, Plaintiff merely alleges the board member who managed the insurance contracts for Plaintiff was not aware of the arbitration provisions, and Plaintiff had no intention of resolving insurance coverage disputes outside of Louisiana.[64] This is a wholly insufficient basis upon which to invalidate the arbitration agreement.

Accordingly, neither of Plaintiff's defenses are properly before the Court, and as a result, the Court must compel arbitration.

---

agreement in a contract, in the absence of fraud or misrepresentation, was essentially an "ineffective notice" defense, not properly before the Court at this stage).
[60] *Bautista*, 396 F.3d at 1301.
[61] *Baricuatro v. Industrial Personnel & Mgmt. Servs., Inc.*, 927 F. Supp. 2d 348, 369 (E.D. La. 2013).
[62] *Id.*
[63] R. Doc. 14.
[64] *Id.* at p. 4.

### III. Bad Faith Claims

Plaintiff argues that, should the Court find the contractual damages dispute is subject to arbitration, it should be allowed to litigate its bad faith claims in this Court.[65] Having determined that arbitration is appropriate, the Court now considers Plaintiff's request.

> The Policies at issue in this case state, in relevant part:
>
> All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.
> . . .
>
> The Arbitration Tribunal may not award exemplary, punitive, multiple, or other damages of a similar nature.[66]

Plaintiff argues the last line—that the Arbitration Tribunal may not award exemplary, punitive, multiple, or other damages of a similar nature—prevents the Arbitration Tribunal from considering Plaintiff's claims for bad faith damages under Louisiana R.S. 22:1892 and 22:1973.[67] Though Plaintiff notes that another section of this Court recently rejected an argument nearly identical to Plaintiff's in *Olsen Securities Corp. v. Certain Underwriters at Lloyd's London*,[68] Plaintiff disagrees with its holding.[69] However, Plaintiff's disagreement lacks legal support.

"The Fifth Circuit has held that 'whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration.'"[70] "Typically, courts have rejected the argument that bad faith claims fall outside the scope of the arbitration

---

[65] R. Doc. 14 at p. 5.
[66] R. Doc. 45-2 at pp. 37-38.
[67] R. Doc. 14 at p. 5.
[68] *Olsen*, No. 22-3120, 2023 WL 405437, at *6.
[69] R. Doc. 14 at p. 5.
[70] *Olsen*, No. 22-3120, 2023 WL 405437, at *6.

11

agreement where the clause contains language that all claims and disputes related to the contract are subject to arbitration."[71]

The Court finds the decision by another section of this Court in *Olsen* persuasive in the instant matter. In *Olsen*, the arbitration clause provided that "all matters in difference" between the parties were subject to arbitration.[72] Notwithstanding a provision in the Policy providing "the arbitration tribunal 'may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature,'" the Court found the bad faith claims "derive directly from the Policy and there are subject to the arbitration clause," because "[w]ithout the existence of that contractual relationship between the parties, the[] claims would not exist."[73]

The contractual provisions in the instant case are identical to those in *Olsen* and several other cases within the Fifth Circuit.[74] These cases each have rejected arguments identical to those made by Plaintiff herein.[75] Accordingly, Plaintiff's bad faith claims against Defendants are subject to arbitration.

## IV. Request for a Stay

Finally, Defendants' ask the Court to stay the action pending arbitration.[76] Pursuant to the FAA, when referred to arbitration, the court in which the suit is pending "shall be on application of one of the parties stay the trial of the action until such

---

[71] *Id.* (collecting cases).
[72] *Id.*
[73] *Id.*
[74] *Id.*; *Figear, LLC v. Velocity Risk Underwriters Claims*, No. 22-cv-01094, 2022 WL 2812980, at *2 (E.D. La. July 18, 2022) (Fallon, J.); *see also Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Llyod's, London*, No. 20-102-JWD-SDJ, 2021 WL 359735, at *15 (M.D. La. Feb. 2, 2021).
[75] *See Olsen*, 22-3120, 2023 WL 405437, at *6. *Figear, LLC v. Velocity Risk Underwriters Claims*, No. 22-cv-01094, 2022 WL 2812980, at *2 (E.D. La. July 18, 2022) (Fallon, J.); *see also Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Llyod's, London*, No. 20-102-JWD-SDJ, 2021 WL 359735, at *15 (M.D. La. Feb. 2, 2021).
[76] R. Doc. 10 at p. 1.

arbitration has been had in accordance with the terms of the agreement."[77] Accordingly, Defendants' request for a stay is granted.

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration and Stay Pending Arbitration[78] is **GRANTED**.

The Clerk of Court shall **STAY AND ADMINISTRATIVELY CLOSE** this case, to be reopened, if necessary and upon written motion by a party, after arbitration is completed.

**New Orleans, Louisiana, this 18th day of August, 2023.**

*[signature: Susie Morgan]*

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[77] 9 U.S.C. § 3.
[78] R. Doc. 10.